IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

UNITED STATES OF AMERICA

v.  CRIMINAL NO. 2:17-00171

BRANDON EDWARD PISTORE

**MEMORANDUM OPINION**

On May 9, 2018, came the defendant, in person and by counsel, Lorena E. Litten, Assistant Federal Public Defender; came the United States by Meredith George Thomas, Assistant United States Attorney; for a hearing on defendant's motion to dismiss the indictment for violation of the Interstate Agreement on Detainers. At the conclusion of that hearing, the court denied defendant's motion. This Memorandum Opinion sets out more fully the reasons for that ruling.

Background

On October 3, 2017, a federal grand jury in this district returned an indictment against Brandon Edward Pistore charging him as a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). That same day, the United States lodged a detainer against Pistore with the South Central Regional Jail ("SCRJ"). See ECF No. 35-2. At the time the federal indictment was returned, Pistore was in the custody of the State of West Virginia and being held at the SCRJ as an unsentenced prisoner. See ECF No. 35-2. On November 14, 2017, Pistore was convicted of possession with intent to deliver

methamphetamine in the Circuit Court of Kanawha County, West Virginia and sentenced to one to five years.  See ECF No. 35-1.

On November 15, 2017, pursuant to a Writ of Habeas Corpus Ad Prosequendum, see ECF Nos. 6 and 8, Pistore was brought to federal court for an initial appearance on the federal indictment.  At the conclusion of that hearing, Pistore was remanded to the custody of the United States Marshals Service ("USMS").  See ECF No. 15.  He returned to federal court on November 20, 2017, for an arraignment and detention hearing.  See ECF Nos. 16, 17, and 18.  At the conclusion of that hearing, Pistore was once again remanded to the custody of the USMS.  See ECF Nos. 16 and 17.

On February 7, 2018, Pistore entered a plea of guilty to the one-count indictment.  See ECF Nos. 32, 33, 34, and 36.  The court ordered defendant remanded to the custody of the USMS.  See ECF Nos. 32, 34, and 36.  Although Pistore should have remained in federal custody, he was returned to the custody of the state of West Virginia and, on February 15, 2018, he was transferred to the Salem Correctional Center ("SCC").  See ECF No. 35-3.

Both the government and defendant agree that Pistore should not have been returned to state custody after entering his guilty plea.  At some point, Pistore was transferred from SCC to SCRJ where he remains in the custody of the USMS.  In the course of

these transfers between SCRJ and SCC, Pistore lost possession of certain personal property.

## Discussion

"The Interstate Agreement on Detainers Act (IAD), 18 U.S.C. App. § 2, is a compact among 48 States, the District of Columbia, and the Federal Government. It enables a participating State to gain custody of a prisoner incarcerated in another jurisdiction, in order to try him on criminal charges." Reed v. Farley, 512 U.S. 339, 341 (1994). "The Agreement provides for expeditious delivery of the prisoner to the receiving State for trial prior to the termination of his sentence in the sending State. And it seeks to minimize the consequent interruption of the prisoner's ongoing prison term." Alabama v. Bozeman, 533 U.S. 146, 148 (2001). To that end, Article IV(e) of the IAD prohibits the return of a prisoner to a sending State before the trial in the receiving State is complete. It provides in pertinent part:

> If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to article V(e) hereof, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

18 U.S.C. app. 2 § art. IV(e).[1]  This section of the IAD is commonly referred to as the antishuttling provision.  See Bozeman, 533 U.S. at 150.

Pistore argues that the term "trial" in Article IV(e) includes sentencing and that his return to West Virginia custody prior to sentencing violated the antishuttling provision of the IAD.  In so arguing, Pistore relies upon a decision from the United States Court of Appeals for the Ninth Circuit in which that court "conclude[d] that the terms `trial' and `final disposition' as used in the IAD encompass sentencing[.]" Tinghitella v. California, 718 F.2d 308, 311 (9th Cir. 1983); see also Walker v. King, 448 F. Supp. 580, 588 (S.D.N.Y. 1978) ("We therefore hold that the only interpretation of the Act [IAD] which is consistent with the Congressional intent and purposes is one which requires a state which has taken custody of a prisoner for purposes of resolving an untried indictment to sentence that prisoner before returning him to the original place of imprisonment.").

In a persuasive opinion, the United States Court of Appeals for the Tenth Circuit considered the issue before this court, albeit in the context of a habeas proceeding, and concluded "that

---

[1] "Article III(d) contains a similar anti-shuttling provision. When . . . a defendant rather than the government has invoked the procedures of the IAD, Article III governs rather than Article IV." United States v. Kelley, 300 F. Supp. 2d 224, 230 (D. Mass. 2003).

trial under the IAD's anti-shuttling provisions does not include sentencing." United States v. Coffman, 905 F.2d 330, 332 (10th Cir. 1990). In so concluding, the Coffman court noted its disagreement with the Tinghitella decision:

> The Ninth Circuit reached its result in Tinghitella by analogizing the term "trial" in the IAD to "trial" under the sixth amendment, which includes sentencing. Id. at 311 (citing Walsh v. United States, 423 F.2d 687, 688 (9th Cir. 1970)). We find no authority for this analogy.
>
> The express statutory framework of the IAD refutes the appropriateness of the Ninth Circuit's analogy. Applying the statutory framework, we agree with the Ninth Circuit that the IAD's use of the term "final disposition" includes sentencing. The use of the term "final disposition," however, when juxtaposed against the use of the word "trial" makes clear that the IAD differentiates between the trial phase of a proceeding and all post-trial procedures, including sentencing. But see Carchman v. Nash, 473 U.S. 716, 744, 105 S. Ct. 3401, 3415, 87 L. Ed. 2d 516 (1985) (Brennan, J., dissenting) ("The term 'trial' is plainly used in the [IAD] to represent the broader concept of 'final disposition.'"); Tinghitella, 718 F.2d at 311 ("trial" and "final disposition" in IAD encompass sentencing).
>
> The IAD draws a clear distinction between "disposition," "final disposition," and "prosecution" on the one hand and "trial" on the other. Disposition refers to the final determination of charges. See IAD Art. I, 18 U.S.C. App. 2, § 2, Art. I ("the purpose of this agreement to encourage the expeditious and orderly disposition of such charges"). Final disposition, primarily used in the context of article III, specifically includes imposition and service of sentence. See IAD Art. III(e), 18 U.S.C.App. 2, § 2, Art. III(e). Similarly, prosecution refers to the total proceedings based on an "untried indictment, information, or complaint." See IAD Art. V(d), 18 U.S.C. App. 2, § 2, Art. V(d) ("[T]emporary custody . . . shall be only for the purpose of permitting prosecution on the charge or charges contained in one or more untried indictments, informations, or

5

> complaints which form the basis of the detainer."). In articles III(d) and IV(e), however, the drafters of the IAD chose to use the term "trial" rather than "disposition," "final disposition," or "prosecution." In our view this change in terminology reflects a decision to limit the scope of the anti-shuttling provisions to pre-conviction transfers. If the drafters had wished to extend the IAD's anti-shuttling provisions to incidences occurring after trial but before sentencing, they could have used the term "disposition," "final disposition," or "prosecution." They did not. Isolating the sentences containing the word "trial," as the Ninth Circuit and Carchman dissent apparently did, renders meaningless the use of the words "disposition," "final disposition," and "prosecution" in the other articles of the IAD. We therefore hold that trial under the IAD's anti-shuttling provisions does not include sentencing.

Id.[2]

The majority of courts to have considered the issue are in agreement with the Coffman court that the IAD is not implicated

---

[2] Tinghitella is also called into question by the Court's recent decision in Betterman v. Montana, 136 S. Ct. 1609 (2016). The Tinghitella court reached its decision, in part, "by analogizing the term "trial" in the IAD to "trial" under the sixth amendment. . . ." Coffman, 905 F.2d at 332; see also Tinghitella, 718 F.2d at 311 ("It is unclear, however, why this should compel the conclusion that `trial' stops with verdict, short of sentencing. The cases do not address the fact that the term `trial' in the speedy trial clause of the Sixth Amendment to the United States Constitution has been construed to include sentencing."). However, in Betterman, the Court held that the Sixth Amendment's speedy trial guarantee "does not apply once a defendant has been found guilty at trial or has pleaded guilty to criminal charges." Betterman, 136 S. Ct. at 1613. As the Court explained, "[t]he course of a criminal prosecution is composed of discrete segments. During the segment between accusation and conviction, the Sixth Amendment's Speedy Trial Clause protects the presumptively innocent from long enduring unresolved criminal charges. The Sixth Amendment speedy trial right, however, does not extend beyond conviction, which terminates the presumption of innocence." Id. at 1618.

6

when a defendant has been convicted of a crime but not yet sentenced. See Pomales v. Hoke, No. 1:11CV2616, 2012 WL 2412061, *6-7 (N.D. Ohio June 26, 2012) ("Petitioner's assertion that the Supreme Court considers a yet-to-be-imposed sentence the equivalent of untried charges is incorrect. . . . The majority of other courts to have considered this question have also decided that the term `trial' does not equate to sentencing under the IAD."); United States v. Rodriguez, Criminal Action No. 09-cr-00606, 2010 WL 5558293, *1 n.1 (E.D. Pa. Dec. 22, 2010) ("`[T]rial' ends with the adjudication of guilt and does not include sentencing. Thus, no violation of the anti-shuttling provisions of the IADA occurs when a defendant is returned to state custody after his plea of guilty in federal court, but before sentencing on the federal charges."); see also Lanzeiri v. Stewart, No. CV021975, 2005 WL 2449998, *9 (D. Ariz. Sept. 30, 2005) ("Plaintiff's petition was denied because Plaintiff was not facing outstanding charges, but was waiting to be sentenced on completed convictions. The IAD therefore did not apply. . . ."); McManus v. Borgen, No. 04-C-0040, 2005 WL 2347296, *4 (E.D. Wis. Sept. 26, 2005) (holding that no IAD violation occurred where "an already convicted prisoner is not returned for sentencing within the time allotted" by the IAD); State v. Bates, 689 N.W. 2d 479, 481 (Iowa App. 2004) ("When faced with the question of whether the Interstate Agreement on Detainers applies when a defendant

7

has been convicted of a crime in another jurisdiction but not yet sentenced, the majority of courts have concluded that it does not."); State v. Grzelak, 573 N.W. 2d 538, 540 (Wisc. Ct. App. 1997) ("The Tinghitella decision has generally not been embraced. Grzelak concedes and the State documents that most courts have held that the word `trial' in the Agreement on Detainers does not encompass a sentencing hearing."); State v. Leyva, 906 P.2d 910, 912 (Utah App. 1995) ("We agree with the majority view that the IAD has no application to sentencing."), abrogated on other grounds by Betterman v. Montana, 136 S. Ct. 1609, 1613 n.1 (2016); State v. Burkett, 876 P.2d 1144, 1146 (Ariz. App. 1993) ("Nearly all jurisdictions that have considered whether the IAD applies to sentencing detainers have concluded that it does not."); State v. Lewis, 422 N.W. 2d 768, 772 (Minn. Ct. App. 1988) ("The IAD was not violated because the term `trial' as it is used in the IAD does not include sentencing."); People v. Housewright, 268 N.W. 2d 401, 403 (Mich. App. 1978) (holding that word "trial" as used in the IAD refers to "determination of guilt and ends with that determination" and therefore "trial" does not include imposition of sentence).

The court agrees with the sound reasoning and analysis in the Coffman decision and further concludes that it represents the majority view. Therefore, based on the foregoing, the court

concludes that the word "trial" in the IAD does not encompass sentencing.[3]

As a final note, the court points out that its decision herein also serves the important "interest of the criminal justice system in the finality of convictions, an interest repeatedly confirmed by the Supreme Court." United States v.

---

[3] The court finds no merit in Pistore's assertion that the government in this district has formerly "agreed" that the term "trial" in the IAD includes sentencing. See ECF No. 35 at p.4. The government's filings in the Hoffman case do not take that position. See United States v. Hoffman, Criminal Action No. 5:09-0216. Furthermore, according to the United States Attorneys' Manual:

> Transfer of Prisoners: Anti-Shuttling Provisions: Article III(d) and Article IV(e) contain similar provisions that require "If trial is not had on any indictment, information, or complaint contemplated hereby prior to the return of the prisoner to the original place of imprisonment, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice" . . . . It has been held that "trial" in this context includes sentencing. See Walker v. King, 448 F. Supp. 580 (S.D.N.Y. 1978). The Department has not accepted this decision as a correct interpretation of the Act. Nevertheless, in order to avoid litigation and the risk of invalidating prosecutions, the return of prisoners should be deferred until after the imposition of sentence or a Section 9 hearing. Where, however, dismissal of an indictment is sought on the basis of a prisoner's return prior to sentencing, it should be resisted.

United States Attorneys Manual § 534C, available at https://www.justice.gov/usam/criminal-resource-manual-534-interstate-agreement-detainers, retrieved 5/15/2018. Viewed against this backdrop, the government's filings in the Hoffman case make perfect sense.

Fugit, 703 F.3d 248, 252 (4th Cir. 2012). By tendering his plea of guilty, Pistore stands convicted of the offense charged in the indictment. See Boykin v. Alabama, 395 U.S. 238, 242 (1969) ("A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment."). Therefore, dismissal of the indictment in this case would be tantamount to vacating a conviction. As the Court explained in the context of dismissal under the speedy trial guarantee, "a dismissal remedy ordinarily would not be in order once a defendant has been convicted." Betterman, 136 S. Ct. at 1615 ("It would be an unjustified windfall, in most cases, to remedy sentencing delay by vacating validly obtained convictions.").

## Conclusion

Based on the foregoing, defendant's motion to dismiss was denied.

The Clerk is directed to send a copy of this Memorandum Opinion to counsel of record, to the United States Marshals Service, and to the Probation Office of this court.

IT IS SO ORDERED this 24th day of May, 2018.

ENTER:

David A. Faber
Senior United States District Judge